UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
KENNETH MOXEY,

                           Appellant,

         -against-

ROBERT L. PRYOR, Bankruptcy Trustee,
MAAAS ENTERPRISES, LP, V-JAMA
HOLDINGS, LLC, TUTHILL FINANCE LP,
The Pretender Lender, MPJM CRUSH
HOLDINGS, LLC, ALAN DREZIN, Court
Appointed Receiver of Rents, and
DAVID A. BETRON,

                           Appellees.
--------------------------------------X

E.D. Bankr. Case
No. 8-12-74340(AST)

Adv. Pro.
No. 8-13-8108(AST)

MEMORANDUM & ORDER
15-CV-4632 (JS)

APPEARANCES
For Appellant:           Kenneth Moxey, pro se
                      923 Custer Street
                      Valley Stream, New York 11580

For Appellees:
Robert L. Pryor,
Bankruptcy Trustee       Justin L. Rappaport, Esq.
                      Pryor & Mandelup, LLP
                      675 Old Country Road
                      Westbury, New York 11590

MPJM Crush Holdings,
LLC, V-Jama Holdings,
LLC, Maaas
Enterprises, LP          Bruce L. Weiner, Esq.
                      Rosenberg Musso & Weiner LLP
                      26 Court Street, Suite 2211
                      Brooklyn, New York 11242

Tuthill Finance LP,
The Pretender Lender    Bruce Minkoff, Esq.
                      Robinowitz Cohlan Dubow & Doherty, LLP
                      199 Main Street, 5th Floor
                      White Plains, New York 10601

Alan Drezin, Court
Appointed Receiver of
Rents; David A. Betron    No appearances.

SEYBERT, District Judge:

Kenneth Moxey, pro se, appeals from an order entered by the Bankruptcy Court, which imposed monetary sanctions against him under Federal Rule of Bankruptcy Procedure 9011 (the "Sanctions Order").    Robert L. Pryor and Tuthill Finance LP ("Tuthill") requested attorney's fees and costs in light of Moxey's meritless and repetitive arguments.    For the reasons that follow, the Sanctions Order is VACATED, and the proceeding is REMANDED to determine whether Moxey, in light of his financial status, can fully pay the total sanctions.

BACKGROUND[1]

The Court assumes familiarity with the facts and procedural history, which are referenced only as necessary to explain the Court's decision.    See, e.g., Pryor v. Moxey (In re

---

[1] References to the Advocacy Proceeding (Adv. No. 8-13-8108) are as follows: Moxey's motion for criminal referral dated February 10, 2014, "Moxey's Referral Mot." (Docket Entry 61); Pryor's motion for sanctions dated May 8, 2014, "Pryor's 1st Mot." (Docket Entry 103); the Bankruptcy Court's order dated December 18, 2014, "Scheduling Order" (Docket Entry 163); Pryor's motion for sanctions dated December 19, 2014, "Pryor's 2d Mot." (Docket Entry 164); Pryor's billing record, "Pryor's R." (Docket Entry 164-1); Tuthill's motion for sanctions dated December 23, 2014, "Tuthill's Mot." (Docket Entry 167-1); Tuthill's billing record, "Tuthill's R." (Docket Entry 167-2); Moxey's recusal motion dated January 5, 2015, "Moxey's Recusal Mot." to (Docket Entry 169); and Moxey's objections to Tuthill's motion for sanctions, "Moxey's Objs." (Docket Entry 190).

Moxey), No. 12-74340, 2014 WL 1820607, at *2-5 (Bankr. E.D.N.Y. May 7, 2014).

I.   The Underlying Events

        To recap, Moxey received a mortgage loan from Tuthill in which he pledged his Brooklyn, New York property as collateral. Id. at *2.   In 2009, Tuthill filed a foreclosure action in the Kings County Supreme Court because Moxey defaulted in his repayment obligations.   Id.   One year later, Tuthill assigned its interest in the note, mortgage, and foreclosure action to MPJM Crush Holdings, LLC ("Crush").[2]   Id.   In June 2012, the Kings County Supreme Court granted Crush a final judgment of foreclosure and sale and found that Moxey owed $757,811.78 plus interest.   Id. Moxey then filed the underlying bankruptcy proceeding to stay the foreclosure sale, and Robert L. Pryor was appointed as the Chapter 7 trustee of the bankruptcy estate.   Id. at *2-3.

        Since then, Moxey has waged a protracted legal battle. As summarized by the Bankruptcy Court:

> Debtor has filed a number of pleadings with this Court which include scandalous and spurious allegations, for which no good faith basis appears to exist, and which include repetitive and overlapping claims for relief which are simply not available at law or in equity.   Debtor has peppered the Defendants

---

[2] Tuthill originally assigned one-half undivided interest in the note and mortgage to Pliny Syndications, LLC ("Pliny") on November 25, 2008.   Then on March 17, 2010, both Tuthill and Pliny assigned their respective interest in the note and mortgage to Crush.   (Tuthill Br., Docket Entry 7, at 2.)

> with numerous pleadings. These pleadings
> allege, <u>inter alia</u>, violations of the Fair
> Debt Collection Practices Act, fraud,
> conspiracy, civil rights violations, civil
> RICO claims, and various criminal violations.

<u>Moxey v. Pryor (In re Moxey)</u>, 522 B.R. 428, 432 (Bankr. E.D.N.Y. 2014); <u>see also id.</u> at 446-47 (dismissing Moxey's remaining claims). Along with his pleadings, Moxey engaged in extensive motion practice.[3] One filing, for example, is a motion for criminal referral to the United States Trustee, in which Moxey alleges that "the bogus assignment of mortgage from Tuthill Finance to Pliny Syndications" violates New York Penal Law. (Moxey's Referral Mot. at 6.) The Bankruptcy Court denied the motion, and this Court affirmed. <u>Moxey v. Pryor</u>, No. 14-CV-2904, 2015 WL 1509573, at *3 (E.D.N.Y. Mar. 31, 2015) ("[Moxey] offers no basis, in fact or in law, for overturning the Bankruptcy Court's decision."). The Second Circuit Court of Appeals also affirmed, finding that Moxey "articulated no facts supporting his allegations of criminal activity." <u>Moxey v. Pryor</u>, 634 F. App'x 52 (2d Cir. 2016).

---

[3] Moxey filed, among other things: (1) a motion to take judicial notice of "Organized Robbery, Conspiracy, and Fraud upon the court," (2) a motion for sanctions against Defendants Tuthill and David Betron for abuse of process, (3) a motion to remove the trustee, and (4) a motion to remand the case to Kings County Supreme Court. (Adv. No. 8-13-8108, Docket Entries 22, 47, 63, 109.)

The absence of legal and evidentiary support is a common thread running through Moxey's filings.  See, e.g., Moxey v. Pryor, No. 14-CV-6972, 2015 WL 5024746, at *5 (E.D.N.Y. Aug. 25, 2015) ("Indeed, based upon the Court's independent review of the Bankruptcy docket, Moxey's behavior has progressed far beyond that required for sanctions under any of the various authorities given to the Bankruptcy Court.").  In fact, Pryor first requested sanctions in May 2014, seeking (1) attorney's fees associated with Moxey's refusal to attend a court-ordered and properly noticed deposition and (2) attorney's fees for the entire Adversary Proceeding due to Moxey's bad faith filings.  (Pryor's 1st Mot. at 1–2.)  The Bankruptcy Court awarded sanctions for the first request, but this Court vacated that order because the Bankruptcy Court "failed to set forth the specific legal authority on which the sanctions were based."  Moxey, 2015 WL 5024746 at *4.  But the Court made clear that this decision "should not be read to condone Moxey's behavior . . . or otherwise license him to continue his pattern of frivolous, vexatious filings."  Id. at *5.

II.  The Present Appeal

Following the dismissal of Moxey's claims, the Bankruptcy Court determined that "a viable basis may exist . . . to assess sanctions under Bankruptcy Rule 9011." (Scheduling Order at 2.)  It then invited any defendant to file and serve a Rule 9011

motion, leaving twenty-four days for Moxey to respond.[4]  (Id. at 2-3.)  The Bankruptcy Court also scheduled a hearing to supplement any timely filed sanction motions and responses.  (Id. at 3.)

In December 2014, both Pryor and Tuthill filed motions for sanctions, (Pryor's 2d Mot. at 13-17; Tuthill's Mot. at 13-19), which the Bankruptcy Court granted, (Sanctions Order,[5] Docket Entry 1, at 10-14).  After reviewing the parties' billing records, (Tuthill's R. at 2-8; Pryor's R. at 31), the Bankruptcy Court calculated a blended hourly rate of $278.85 for Pryor and a blended hourly rate of less than $250 for Tuthill, (Sanctions Order at 12, 14).  Pryor was awarded $66,072 in total: $65,000 in reasonable attorney's fees and $1,072 for out-of-pocket expenses.  (Id. at 14.)  Tuthill was awarded $25,500 in total: $25,000 in reasonable attorney's fees and $500 for out-of-pocket expenses. (Id.)  Critically, however, the Bankruptcy Court did not include a discussion on Moxey's ability to pay or not.

In this appeal, Moxey principally argues that the Sanctions Order is improper because the partial assignment between Tuthill and Pliny is void "ab initio" and thus nullifies all subsequent proceedings.  (Moxey's Br., Docket Entry 5, at 2;

_____

[4] Pryor was not required to file a second sanctions motion but chose to do so.  (See Scheduling Order at 2.)

[5] The Sanctions Order can be found at Docket Entry 1 at pages 3-14.  The Court will use the page numbers generated by the Electronic Filing System when referring to the Sanctions Order.

Moxey's Reply Br., Docket Entry 8, at 6–7, 18.)  He also repeats the refrain of his prior motions, alleging that the parties and the Bankruptcy Court have conspired against him:

> This case is about the exploitation of Blacks by White Businessmen and fraud upon the courts by their Attorneys in which the bankruptcy court has become complicit in the conspiracy.
>
> * * *
>
> On December 3, 2014 the court entered an order calling on all defendants to join in on the sanctions hearing and forced plaintiff to pay their legal fees.  The court acted ultra-vires and abused its authority by offering defendants who are all White . . . the opportunity to get their legal fees reimbursed by plaintiff who is Black, and this behavior is bias [sic] and prejudicial towards Moxey.

(Moxey's Recusal Mot. at 5 ¶ 1, 9 ¶ 30.)

## DISCUSSION

### I.    Standard of Review

A district court reviews a decision to impose sanctions for abuse of discretion.  Elmasri v. Rupp, No. 10-CV-2761, 2011 WL 477726, at *3 (E.D.N.Y. Feb. 2, 2011) (citing In re Highgate Equities, Ltd., 279 F.3d 148, 151 (2d Cir. 2002)).  A bankruptcy court "abuses its discretion if (1) it relies on an erroneous view of the law, (2) its decision rests on a clearly erroneous finding of fact, or (3) its decision--though not necessarily the product of a legal error or a clearly erroneous factual finding--cannot be

located within the range of permissible decisions." <u>United States</u> <u>v. Yannai</u>, 791 F.3d 226, 242 (2d Cir. 2015).

II.   <u>Sanctions Order</u>

To deter bad-faith litigation, Rule 9011 permits a bankruptcy court to issue sanctions, such as "an order directing payment . . . of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." FED. R. BANKR. P. 9011(c)(2).   A bankruptcy court may impose sanctions if an attorney or unrepresented party[6] advances a position (1) for an improper purpose, (2) without legal support, or (3) without evidentiary support.   FED. R. BANKR. P. 9011(b)(1)-(3).   Put differently, Rule 9011 has been violated "when it is patently clear that a claim has absolutely no chance of success." <u>Oliveri v.</u> <u>Thompson</u>, 803 F.2d 1265, 1275 (2d Cir. 1986) (internal quotation marks and citation omitted); <u>accord</u> <u>O.N.E. Shipping Ltd. v. Flota</u> <u>Mercante Grancolombiana, S.A.</u>, 830 F.2d 449, 454 (2d Cir. 1987) ("Sanctions are not to be imposed for unsuccessful litigation of a cognizable claim.").[7]

---

[6] "The fact that a litigant appears <u>pro</u> <u>se</u> does not shield him from . . . sanctions because 'one acting <u>pro</u> <u>se</u> has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets.'" <u>Malley v. N.Y. City Bd. of Educ.</u>, 207 F. Supp. 2d 256, 259 (S.D.N.Y. 2002) (quoting <u>Patterson v. Aiken</u>, 841 F.2d 386, 387 (11th Cir. 1988)).

[7] The Court is aware that these decisions address Rule 11 motions under the Federal Rules of Civil Procedure.  But Rule 9011, as

In reviewing for abuse of discretion, the Court engages in a two-step inquiry: (1) whether sanctions were justified and (2) if so, whether the award of attorney's fees and costs was reasonable.

A.  Rule 9011 Sanctions

As an initial matter, there are two ways to initiate sanction proceedings: (1) by motion or (2) by the bankruptcy court's own initiative. FED. R. BANKR. R. 9011(c)(1)(A)-(B). Under the first scenario, opposing counsel must provide twenty-one-days' notice "(or such other period as the court may prescribe)" before filing the sanctions motion. FED. R. BANKR. R. 9011(c)(1)(A). This "safe harbor" requirement is designed to give the other party "a reasonable opportunity to respond" and correct or withdraw the challenged filings. See FED. R. BANKR. P. 9011(c). But this provision does not apply when the bankruptcy court enters a sua sponte order to show cause why sanctions are not warranted. FED. R. BANKR. P. 9011(c)(1)(B).

Accordingly, the Second Circuit has presented "two separate standards of culpability . . . depending upon who initiates        sanction        proceedings":        (1) an        "objective

_____

the bankruptcy counterpart, "is informed by Rule 11 jurisprudence." In re Cohoes Indus. Terminal, Inc., 931 F.2d 222, 227 (2d Cir. 1991); In re Belmonte, 524 B.R. 17, 30 n.18 (Bankr. E.D.N.Y. 2015) (The Rule 9011 "standard is the same for Federal Rule 11 sanctions.").

unreasonableness" standard for party-initiated motions and (2) a "heightened standard of 'subjective bad faith'" for court-initiated motions. HD Brous & Co., Inc. v. Mrzyglocki, No. 03-CV-8385, 2004 WL 1367451, at *1–2 (S.D.N.Y. June 16, 2004) (citing In re Pennie & Edmonds LLP, 323 F.3d 86 (2d Cir. 2003)). Although Pryor and Tuthill filed sanction motions, the Bankruptcy Court invited them to do so and independently recognized that "a viable basis may exist . . . to assess sanctions under Bankruptcy Rule 9011." (Scheduling Order at 2.) Thus, ostensibly for completeness, the Bankruptcy Court evaluated both the objective and subjective standards. (Sanctions Order at 8–9.)

Reviewing both standards, the Bankruptcy Court did not abuse its discretion by awarding sanctions. (See Sanctions Order at 9–11, 13.) As an initial matter, Moxey received notice and a reasonable opportunity to amend, withdraw, or clarify his filings. The Bankruptcy Court issued a clear briefing schedule and held a hearing to allow Moxey to explain why sanctions were not warranted. (Scheduling Order at 2–3.)

As is plain from the record, Moxey has abused the judicial process by advancing positions without any basis in law or fact. His central response on appeal--that a partial assignment between Tuthill and Pliny was "bogus" and nullified all subsequent proceedings--was rejected, along with all other allegations of criminal activity, by the Bankruptcy Court, the District Court,

and the Second Circuit.  Based on this Court's independent review, Moxey's filings were objectively unreasonable and made in bad faith and thus satisfy both standards of culpability under Rule 9011. See Moxey v. Pryor (In re Moxey), No. 12-74340, 2014 WL 1820607, at *1 (Bankr. E.D.N.Y. May 7, 2014) ("At its core, this lawsuit is little more than Debtor's effort to collaterally attack final judgments of this Court and of a New York state court; but through its sprawling growth, this suit has mushroomed into a waste of the Court's and the parties' limited resources.").  Specifically, under the heightened standard, Moxey acted in bad faith when he: (1) accused Judge Alan S. Trust of racism; (2) filed a sixty-seven-page Amended Complaint with sprawling allegations that were unsupportable from the start; (3) ignored court orders; (4) filed motions to collaterally attack the final judgment of state court; and (5) reflexively challenged or appealed bankruptcy court and district court orders.  Cf. Sassower v. Field, 973 F.2d 75, 77–78, 81 (2d Cir. 1992) (finding bad faith when the offender's conduct included personal attacks on the opposing parties, challenges to almost every adverse ruling, and attempts "to reargue virtually every aspect of the litigation for the third time"); Pentagen Techs. Int'l Ltd. v. United States, 172 F. Supp. 2d 464, 473 (S.D.N.Y. 2001) (finding bad faith when the offending parties "engaged in a pattern of litigation designed to evade previous

rulings" and "were keenly aware of the repetitive nature of their claims").

Moreover, sanctions are necessary to deter further misconduct, especially in light of Moxey's response to these sanction proceedings:

> Fraud upon the court is a disease, and Doctor Kenneth G. Moxey will diagnose this disease by filing an appeal directly to the Second Circuit Court of appeals if this [bankruptcy] court enters an order of sanctions against him, and will further file a motion to reopen the foreclosure case with the Kings County Supreme Court, file a motion to vacate the foreclosure judgment for fraud upon the court and further file a motion for criminal referral to the Kings County District attorney for an investigation into the conspiracy and fraud upon the court by the defendants in this case.

(Moxey's Obj. at 10, ¶ 57.)  In other words, Moxey will continue to make frivolous arguments.  A sanctions award should deter this conduct and prevent similar behavior in the future.  Therefore, the Bankruptcy Court did not abuse its discretion by granting sanctions.

   B.   Attorney's Fees and Costs

But the Bankruptcy Court abused its discretion by awarding attorney's fees and costs without considering Moxey's ability to pay.  (See Sanctions Order at 12–14.)  To begin, the Bankruptcy Court awarded attorney's fees and costs for Pryor ($66,072) and Tuthill ($25,500).  (Id. at 14.)  In so concluding,

the Bankruptcy Court calculated a blended hourly rate of $278.85 for Pryor and a blended hourly rate of less than $250 for Tuthill. (Id. at 12, 14.)  Missing from the Sanctions Order, however, is any explicit indication that the Bankruptcy Court considered Moxey's ability to pay.

In this Circuit, "when a court awards defendants attorney's fees, it must take into account the financial circumstances of the plaintiff." Sassower, 973 F.2d at 81.  So even though the billing rates are within reason, see In re Bruns, No. 08-75936, 2009 WL 2045924, at *7 (Bankr. E.D.N.Y. July 2, 2009) (approving a $250 hourly rate for bankruptcy counsel), the Bankruptcy Court "should have ascertained whether, in light of [Moxey's] ability to pay, a lesser sum assessed would have fulfilled the statute's deterrent purpose without subjecting him to financial ruin," Faraci v. Hickey-Freeman Co., Inc., 607 F.2d 1025, 1029 (2d Cir. 1979).  Without that information, the Court must vacate the Sanctions Order and remand the proceedings. See, e.g., Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 173-74, 179 (2d Cir. 2012) (reducing a sanctions award of approximately $105,000 in legal fees to $10,000 in light of the plaintiffs' financial hardship); Steinberg v. St. Regis/Sheraton Hotel, 583 F. Supp. 421, 426 (S.D.N.Y. 1984) (finding that an award of approximately $75,000 in legal fees was

13

unreasonable because the plaintiffs were "middle-class, working men of no great wealth").

CONCLUSION

The order of the Bankruptcy Court is VACATED, and the proceeding is REMANDED to determine whether the pro se Appellant, in light of his financial status, can fully pay the $91,572 total sanctions.

The Clerk of the Court is directed to mail a copy of this Memorandum and Order to the pro se Appellant.


SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    March    31   , 2017
          Central Islip, New York